**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HAROLD FORD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:14 CV 197 RWS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Petitioner Harold Ford has filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside or

Correct Sentence by a Person in Federal Custody. Ford asserts several claims, including that he

did not voluntarily or knowingly enter into his plea, that he received ineffective assistance of

counsel, and that his indictment was unconstitutional. For the reasons set forth below, I will

deny Ford's motion.

## I.        Background

On April 23, 2009, victim A.L. was putting gas in her green 2001 Toyota Avalon at the

Phillips 66 gas station at 8601 Airport Road, in St. Louis County, Missouri. When A.L. finished

fueling her Toyota Avalon and turned to enter the car, Ford was standing between A.L. and the

driver's side door. Ford, wearing a black stocking cap and jacket, showed A.L. his .38 Special

caliber revolver and ordered A.L. into the car. Ford ordered A.L. to drive him to places within

the Eastern District of Missouri. Ford warned A.L. that if she looked at his face, he would "pop"

her. Ford brandished the revolver by removing it from his waistband and pointing it at A.L.

Ford also warned A.L. that he had just finished serving eighteen years of a twenty year sentence

in state prison.

After driving to several locations, Ford took A.L.'s cell phone and driver's license, warning her that if she called the police, Ford would send someone to A.L.'s house to take care of her. Ford then drove away in A.L.'s Toyota Avalon.

Approximately two weeks later, on the early morning of May 7, 2009, St. Louis Metropolitan Police officers Ron Ross and Dan Newcomb were on patrol in South St. Louis City. The officers observed the green Toyota Avalon driven by Ford run a red light and proceed the wrong way down a one-way street. When the officers activated the emergency lights on their marked patrol car to curb the Toyota Avalon, Ford fled at a high rate of speed, eventually crashing the Toyota Avalon into a brick residence. Ford then exited the driver's side door of the Toyota Avalon and fired two shots from his .38 Special caliber revolver into the windshield of the marked patrol car. Ford fired three more shots into the passenger side window of the patrol car, shooting Officer Ross in the hand and deafening Officer Newcomb. Officers Ross and Newcomb withdrew from the scene and issued an officer in need of aid call. Additional officers arrived at the scene and apprehended Ford minutes later.

On May 14, 2009, Ford was indicted in the United States District Court for the Eastern District of Missouri on three counts of (1) carjacking, (2) possessing a firearm in furtherance of a crime, and (3) being a felon in possession of a firearm. On October 29, 2009, a superseding indictment was returned, charging Ford with (1) carjacking, (2) possessing and brandishing a firearm in furtherance of a crime, and (3) being a felon in possession of a firearm. On November 11, 2011, Ford pled guilty to all three counts of the superseding indictment. At his plea hearing, Ford stated under oath that he understood the Plea Agreement and everything contained within the Plea Agreement was true. Pl. Hr'g at 8.

After Ford's guilty plea, the United States Probation Office prepared a Presentence Investigation Report (PSR). The PSR concluded that Counts One and Three of the indictment should be grouped for calculation purposes under the United States Sentencing Guidelines (USSG). As a result, pursuant to USSG § 2B3.1, Ford's Base Offense Level was twenty. The following additional levels were added to Ford's Base Offense: (1) six levels pursuant to § 2B3.1(b)(3)(C), because a victim sustained permanent bodily injury; (2) four levels pursuant to § 2B3.1(b)(4)(A), because a victim was abducted to facilitate commission of the offense; (3) two levels pursuant to § 2B3.1(b)(5), because the offense involved carjacking; (4) six levels pursuant to § 3A1.2(c)(1), because Ford assaulted a law enforcement officer during the course of the offense or immediate flight therefrom; and (5) two levels pursuant to § 3C1.2, for obstruction of justice because Ford recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. Allowing for a two-level reduction for Ford's acceptance of responsibility, Ford's Adjusted Offense Level was 38.

The PSR recounted Ford's extensive criminal history. PSR 9-13. Ford's criminal history included the following three prior convictions for violent felonies. In 1990, Ford was convicted of Robbery in Shelby County, Tennessee. In that case, Ford entered a gas station, grabbed the clerk from behind, and stole $71 in cash. Ford served three years in prison for that crime.

In 1992, Ford was convicted of Robbery Second Degree and Tampering First Degree in St. Louis County. In that case, Ford approached the victim from behind after they exited the same bus. When the victim turned around, Ford pointed a handgun in the victim's face and tore jewelry from the victim's neck. Ford fled to a nearby gas station. There, Ford pointed the handgun at the driver of a car, entered the car, and drove away. Ford was sentenced to twenty years in prison for that crime.

In 1995, while Ford was serving his twenty year sentence, he was convicted of Offering Violence by an Inmate. The record showed that Ford attempted to stab another inmate with an improvised icepick.

Ford's prior convictions also included convictions for: Felony Theft of Property in St. Francis County, Arkansas, in 1986 (Case No. 1986-92); Felony Stealing in St. Louis County in 1988 (Case No. 571939); and Terroristic Threat in St. Francis County, Arkansas, in 1989 (Case No. S89-2349). PSR at 10, 11.

Based upon his prior felony convictions, the PSR concluded that Ford was both an Armed Career Criminal under 18 U.S.C. § 924(e) and a Career Offender under USSG § 4B1.1. Because Ford was an Armed Career Criminal and a Career Offender, his Criminal History Category was increased from Category IV to VI.

On April 30, 2012, I imposed the following sentence: (1) a term of 180 months on Count One (carjacking); (2) a term of life on Count Two (possessing a firearm in furtherance of a crime); and (3) a term of life on Count Three (being a felon in possession of a firearm). Counts One and Three were to be served concurrently; Count Two was to run consecutively to Counts One and Three.

Ford timely appealed his sentence to the United States Court of Appeals for the Eighth Circuit. On appeal, Ford argued that (1) Counts One and Three should not have been grouped for purposes of the sentencing guideline calculations; (2) his sentence was unreasonable because the Court did not fully consider the § 3553(a) factors; and (3) there was a procedural error because I did not provide a proper explanation of the sentence. See Petitioner's Appellate Brief, Cause No. 12-2094. The Eighth Circuit affirmed Ford's sentence on February 8, 2013. United States v. Harold Ford, 703 F.3d 387 (8th Cir. 2013).

On February 3, 2014, Ford timely filed the instant motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

## II.      Grounds for Relief

In his 28 U.S.C. § 2255 motion, Ford alleges the following grounds for relief:  (A) There was error in the plea process because his plea was not made knowingly and voluntarily, and there is no record of the change of plea hearing as required by Rule 11(g) of the Federal Rules of Criminal Procedure;  (B) His sentence was in excess of the maximum authorized by law;  (C) He was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution because his counsel failed to explain the application of Rule 11(c)(1), (2), (3), (4) & (5) of the Federal Rules of Criminal Procedure, Title 18 U.S.C. § 3559 (c), or Title 18 U.S.C. § 924(e); and because his attorney failed to investigate or discover potential exculpatory evidence and inform him of his rights;  (D) Ford's sentence violates the Fifth and Sixth Amendments because provisions were added to the sentencing guidelines that were not in the indictment and a modified categorical approach should have been used for his sentence enhancement.

## III.      Standard for § 2255 Relief

Section 2255 of Title 28 of the United States Code provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; see also Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief on the ground

that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.").  A motion pursuant to § 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  <u>United States v. Wilson</u>, 997 F.2d 429, 431 (8th Cir.1993) (quoting <u>Davis v. United States</u>, 417 U.S. 333, 343 (1974)).

"Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255."  <u>Theus v. United States</u>, 611 F.3d 441, 449 (8th Cir. 2010) (quoting <u>United States v. Wiley</u>, 245 F.3d 750, 752 (8th Cir.2001)).  One exception arises when there is a "miscarriage of justice," but the Eighth Circuit has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence." The United States Supreme Court has not extended the exception beyond situations involving actual innocence.  <u>Wiley</u>, 245 F.3d at 752.  "[T]he Court has emphasized the narrowness of the exception and has expressed its desire that it remain 'rare' and available only in the 'extraordinary case.'"  <u>Id.</u>  Section 2255 ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal."  <u>Ramey v. United States</u>, 8 F.3d 1313, 1314 (8th Cir. 1993).  "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."  <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998) (citations omitted).

## IV.    ANALYSIS

### A.  The Plea Process

Ford alleges there were errors in the plea process.[1]  He argues that I erred by accepting his guilty plea without an affirmative showing that it was intelligent and voluntary in violation of Federal Rule of Criminal Procedure 11.  I construe this to be a claim that Ford did not voluntarily and knowingly plead guilty.

This claim is procedurally defaulted because Ford failed to raise it on direct appeal.  See Ramey, 8 F.3d at 1314.  As a result, Ford can only assert this claim if he can demonstrate cause and prejudice or actual innocence.  See Bousely, 523 U.S. at 622.  Ford has failed to establish cause and prejudice, or actual innocence.  I can grant him no relief on this claim.

Furthermore, even if Ford's claim was not procedurally defaulted, it would still fail because it is directly contradicted by the Plea Agreement, Ford's plea colloquy, and the transcript of his sentencing hearing.

A voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  Mabry v. Johnson, 467 U.S. 504, 508 (1984).  A defendant may waive the right to seek collateral relief under Section 2255. Chesney v. United States, 367 F.3d 1055, 1058 (8th Cir. 2004).  Such a waiver is enforceable when the claim raised falls within the scope of the waiver, the defendant knowingly and voluntarily entered into the plea agreement, and enforcement of the waiver would not result in a miscarriage of justice.  Ackerland v. United States, 633 F.3d 698, 701 (8th Cir. 2011).

---

[1] Ford also claims that there is no record of the plea proceedings as required by Rule 11(g) of the Federal Rules of Criminal Procedure.  Ford's claim has no merit.  The Government ordered a transcript of the plea proceedings and it is docketed and available at #[219] in the Court's electronic file.

In his Plea Agreement, Ford agreed to "waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255." Furthermore, at the change of plea hearing, I specifically addressed the waiver with Ford, asking:

> Court:  Now, if I sentence you consistent with the plea agreement, you have agreed not to file any other motions or any other lawsuits challenging how your case has been handled except for a claim you may have for misconduct by the prosecutor or ineffective assistance by your lawyer. Do you understand that?
>
> Ford:  Yes.

Pl. Hr'g at 11. Ford has not contested that the waiver was given both "knowingly and voluntarily." As a result, the waiver is enforceable. United States v. Rutan, 956 F.2d 827, 829 (8th Cir. 1992) ("If a waiver of appeal is made knowingly and voluntarily, it is enforceable."). As a result Ford's claim that his plea was not made knowingly and voluntarily fails.

**B.  Sentencing Enhancement**

Ford claims that his sentence was in excess of the maximum authorized by law because he "has only one serious violent felony that qualify(s)." Motion at 5. Specifically, Ford asserts that he was improperly sentenced because he "allegedly has Four Prior Convictions for Felonies that the government is using to enhance his sentence. However, only one violent felony qualify(s) pursuant to Title 18 U.S.C. § 3559 (c)(2)(F)(i)[2]." Memorandum at 7.

Ford's claim fails because he did not raise this issue during his direct appeal. Ford is precluded from asserting claims in a § 2255 motion that he failed to raise on direct appeal. See Ramey, 8 F.3d at 1314. Ford could only assert this claim if he could demonstrate cause and prejudice or actual innocence, which he is unable to do. See Bousely, 523 U.S. at 622. Ford has failed to establish cause and prejudice, or actual innocence. As a result, I can grant him no relief on this claim.

---

[2] Title 18 U.S.C. § 3559(c) is not applicable to Ford's case because he was not sentenced under this provision.

Even if Ford's claim was not procedurally barred, his claim fails on the merits. Ford was found to be an Armed Career Criminal under Title 18 U.S.C. § 924(e) and a Career Offender under USSG § 4B1.1.

Under Title 18 U.S.C. § 924(a)(2), a defendant convicted of being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g) can be sentenced to no more than ten years in prison. United States v. Smalley, 294 F.3d 1030, 1031 (8th Cir. 2002). The Armed Career Criminal Act (ACCA), however, mandates a minimum sentence of fifteen years for anyone convicted of being a felon in possession of a firearm if the defendant has three previous convictions for either a violent felony or a serious drug offense. 18 U.S.C. § 924(e). Specifically, the ACCA provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1). A violent felony is defined as:

> Any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that -- (i) has as an element the use, attempted use, or threatened use of physical force against the person of another.

18 U.S.C. § 924(e)(2)(B).

Title 18 U.S.C. § 924(e) applies to Ford because he pled guilty to one count of being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g) and Ford had previously been convicted of three violent felonies. Ford's three prior violent felonies include: (1) Robbery, Shelby County, Tennessee (Case No. 90-02653); (2) Robbery Second Degree, St. Louis,

Missouri (Case No. 911-2287); and (3) Offering Violence by an Inmate in Madison County, Missouri (Case No. CR194-21F).

Ford challenges the use of his conviction in Tennessee in his sentencing. He argues that "[t]he Shelby County prior conviction is a non-qualifying prior conviction, because there was no use of a weapon and no serious bodily injury." Reply at 5. The PSR negates Ford's claim; it states that Ford "entered a service station went around the counter, grabbed the clerk from behind and took $71 in cash." Thus, Ford's use of physical force against the clerk and his subsequent imprisonment qualifies as a violent felony under 18 U.S.C. § 924(e)(2)(B). As a result, the use of the Shelby County conviction for enhanced sentencing under 18 U.S.C. § 924(e) was proper.

### C. Ineffective Assistance of Counsel

Ford alleges that he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. Ford argues his counsel was ineffective by failing to explain the application of Rule 11(c)(1), (2), (3), (4) & (5) of the Federal Rules of Criminal Procedure, Title 18 U.S.C. § 3559(c), and Title 18 U.S.C. § 924(e). Ford further argues that his attorney was ineffective for "[f]ailure to investigate and/or discover potentially exculpatory evidence challenging the prior conviction records during trial. And failure to inform me of my rights during the change of plea hearing, the trial, and the sentencing." Motion at 7.

To prevail on a claim alleging ineffective assistance of counsel, Ford must satisfy the two-part test of Strickland v. Washington, 466 U.S. 668 (1984). For a convicted defendant to prove his counsel was ineffective, the defendant must first show that the counsel's performance was deficient. Id. This requires the defendant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. A defendant can demonstrate that counsel's performance was deficient where

counsel's performance "fell below an objective standard of reasonableness." <u>Id.</u> at 688. However, "[t]here is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. If the defendant fails to show that his counsel was deficient, the court need not address the second prong. <u>Brown v. United States</u>, 311 F.3d 875, 878 (8th Cir. 2002).

Second, the defendant must also demonstrate that the deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. In the context of a guilty plea, a "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

The Eighth Circuit has described the <u>Strickland</u> test as follows, "[w]hether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." <u>Fields v. United States</u>, 201 F.3d 1025, 1027 (8th Cir. 2000). When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" <u>Fields</u>, 201 F.3d at 1027, (quoting <u>Strickland</u>, 466 U.S. at 688). "And we avoid making judgments based on

hindsight." Id.  A reviewing court's "scrutiny of counsel's performance must be highly deferential."  Strickland, 466 U.S. at 689.

Where a defendant raises multiple claims of ineffective assistance, each claim must be examined independently rather than collectively.  Hall v. Luebbers, 296 F.3d 685, 692-93 (8th Cir. 2002).

> (i) *Ford's counsel did not fail to explain the application of Rule 11 c)(1), (2), (3), (4) & (5) of the Federal Rules of Criminal Procedure, Title 18 U.S.C. § 3559(c), or Title 18 U.S.C. § 924(e).*

Ford claims his counsel was ineffective by failing to explain the application of Rule 11(c)(1), (2), (3), (4) & (5) of the Federal Rules of Criminal Procedure, Title 18 U.S.C. § 3559(c), and Title 18 U.S.C. § 924(e).  For the reasons set forth below, Ford's claims fail.

Ford first argues that his attorney was ineffective because he failed to explain the application of Rule 11(c)(1), (2), (3), (4) & (5) of the Federal Rules of Criminal Procedure.  Rule 11(c)(1) governs Plea Agreement Procedure.  It states that an attorney for the government and the defendant's attorney may discuss and reach a plea agreement, and the plea agreement may specify that the attorney for the government will:

> (A) not bring, or will move to dismiss other charges;  (B) recommend, or agree not to oppose the defendant's request that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court);  or (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

Fed. R. Crim. P. 11(c)(1).

Rule 11(c)(2) states that "the parties must disclose the plea agreement in open court when the plea is offered." Fed. R. Crim. P. 11(c)(2). Under Rule 11(c)(3)(A), if the agreement is of the type found in Rule 11(c)(1)(A) or (C), then the "court may accept the agreement, reject it, or defer a decision." Fed. R. Crim. P. 11(c)(3)(A). If the agreement is a Rule 11(c)(1)(B) plea, which it was here, then under Rule 11(c)(3)(B) "the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request." Fed. R. Crim. P. 11(c)(3)(B).

Rules 11(c)(4) and (5), which govern Accepting a Plea Agreement and Rejecting a Plea Agreement, respectively, only apply to plea agreements of the type specified in Rule 11(c)(1)(A) or (C). Accordingly, they do not apply in this case.

Pursuant to Rule 11(c)(2), the government's attorney, Ford, and Ford's attorney discussed the plea agreement in open court at the change of plea hearing. Pl. Hr'g at 8. At the change of plea hearing Ford testified he had read and fully understood the plea agreement. Id. He also testified that his attorney had answered all of his questions in regards to the Plea Agreement. Id. Further, as required by Rule 11(c)(3)(B), I asked Ford if he understood that he had no right to withdraw his guilty plea if the sentence were more severe than what was recommended by his attorneys or than he had hoped for. Ford stated that he understood. Id. at 24. As a result, there is no evidence that Ford's counsel's performance was deficient. Furthermore, even if Ford's attorney failed to explain Rules 11(c)(1), (2), and (3), I am unable to see how Ford has been prejudiced by this failure because all requisite Rule 11 procedures were followed.

Second, Ford alleges he received ineffective assistance because his counsel failed to explain how 18 U.S.C. § 3559(c) applied to his sentencing. Ford claims "924(c) is in conjunction with the sentencing provisions of 3559 (c) to impose a life sentence." Reply at 5.

Ford's claim is unfounded. Title 18 U.S.C. § 3559(c) is not applicable to Ford's case because he was not sentenced under this provision. Ford's sentence was enhanced based on his status as an Armed Career Criminal under Title 18 U.S.C. § 924(e) and a Career Offender under USSG § 4B1.1. Any alleged failure of Ford's attorney to explain Title 18 U.S.C. § 3559(c) to him was not prejudicial.

Finally, Ford claims his counsel was ineffective for failing to explain the applicability of 18 U.S.C. § 924(e) and how it would "affect Petitioner's statutory maximum and minimum sentence penalty." Motion at 4. Ford further claims that "counsel and Petitioner did not communicate because the defendant did not understand the nature of the offense being charge, as to what is an Armed Career Criminal or Career Offender." Reply at 6. The record, however, negates Ford's claim. Ford's plea agreement explained that there was a possibility that Petitioner would be subject to a mandatory minimum sentence of 15 years, a maximum sentence of life, an enhanced criminal history category, and an enhanced offense level. The plea agreement further provides:

A. **Possibility of Career Offender Status:** Defendant understands that if defendant is determined, based on the underlying offense and defendant's criminal history, to be a career offender under Sentencing Guidelines § 4B1.1, then the Guideline sentence shall be determined under Sentencing Guidelines § 4B1.10, which would result in a higher offense level and a criminal history category as high as VI. Defendant has discussed this possibility with defense counsel and understands this possibility. Defendant understands that, in such a circumstance, the Government will advocate for a career offender sentence under Sentencing Guidelines § 4B1.1.

B. **Possibility of Armed Career Criminal Status:** Defendant understands that if defendant is determined, based on the underlying offense and defendant's criminal history, to be an armed career criminal under Sentencing Guidelines § 4B1.4 and 18 U.S.C. § 924(e), then the Guideline sentence shall be determined under Sentencing Guidelines § 4B1.4, which would result in a higher offense level and a criminal history category as high as VI. Defendant has discussed this possibility with defense counsel and understands this possibility. Defendant understands that, in such a circumstance, the

> Government will advocate for an armed career criminal sentence under
> Sentencing Guidelines § 4B1.4.

Additionally, at the change of plea proceedings Ford stated that he had read the plea agreement, he "went over it with [his] attorney," his attorney had answered all of his questions, he understood what was in the agreement, and everything in the agreement was true. Pl. Hr'g at 8. The record demonstrates that Ford's counsel's performance was not deficient by failing to explain how 18 U.S.C. § 924(e) would affect his sentence.

Furthermore, even if Ford's attorney was deficient by failing to explain the application of 18 U.S.C. § 924(e), a claim in direct contradiction of the record, I cannot see how Ford would have been prejudiced. Even without counsel's assistance, Ford was fully informed of the applicability of 18 U.S.C. § 924(e) in the Plea Agreement and during the Plea Proceedings. Moreover, Ford has not established that he would have chosen to go to trial instead of pleading guilty had he been more fully informed.

(ii) *Ford's attorney did not fail to investigate or find evidence challenging the prior conviction.*

Ford alleges that his attorney was ineffective by failing to investigate or find evidence that would challenge his prior conviction records during trial. Although never explicitly stated by Ford, I assume that he is referencing the use of the Shelby County conviction; a conviction that I have already found to be proper and applicable to Ford's classification as an Armed Career Criminal under § 924(e) and as a Career Offender under USSG § 4B1.1.

In some circumstances, a failure to investigate may be a breach of the duty to act as a reasonably competent attorney, but such a breach does not warrant postconviction relief unless the defendant also shows prejudice. United States v. McMillan, 606 F.2d 245, 247 (8th Cir. 1979). Ford has not presented any evidence to support his claim that his attorney failed to

investigate his prior criminal conviction.  Additionally, at the change of plea hearing, Ford was advised that his past criminal record would be considered during sentencing.  Pl. Hr'g at 12.  He was also informed of the potential maximum statutory sentences.  Id. at 21-22.  Ford indicated under oath at his change of plea hearing that he understood he had the right to object to the PSR, which included the facts of the Shelby County conviction.  Id. at 9.  Accordingly, I am not convinced that Ford's counsel's performance was deficient.  Moreover, Ford has not demonstrated that he was prejudiced by this alleged failure because he had notice and opportunity to object to the use of the Shelby County Conviction.

(iii) *Counsel did not fail to inform Ford of his rights during the change of plea hearing, the trial, and the sentencing.*

Ford claims that his attorney failed to inform him of his rights during the change of plea hearing, the trial, and the sentencing.  He states he "did not understand the nature of the offense, as to what is an Armed Career Criminal or Career Offender."  Reply at 6.  Specifically, he states he did not understand the application of Armed Career Criminal or Career Offender status to his sentencing.

The record negates Ford's claim.  The Plea Agreement states that Ford may be found to be an Armed Career Criminal under 18 U.S.C. § 924(e) or USSG § 4B1.1.  Moreover, the change of plea hearing transcript reflects that Ford was informed of the mandatory minimum sentence if found guilty of being an Armed Career Criminal or Career Offender.  Ford and I had the following exchange at the change of plea hearing:

| Court: | And that if you're found -- if you're found to have an enhanced criminal status, that the mandatory minimum sentence may be 15 years.  Do you understand that? |
| Ford: | Yes. |

Pl. H'rg at 21-22.

Additionally, even if Ford's counsel had failed to explain the application of 18 U.S.C.

§ 924(e) to Ford, Ford has not demonstrated prejudice because he was fully informed of his

potential for enhanced sentencing by way of the Plea Agreement and the Plea Proceedings.

### D. Fifth and Sixth Amendment Claims

Ford broadly asserts that his Fifth and Sixth Amendment rights were violated. In his

motion he alleges that he:

> was sentenced by facts that increase his statutory maximum guideline range. That was not
> addmited by defendant and not submitted to a jury . . . . The Court violated his due
> process rights by not conducting a modified categorical approach as to the factual basis
> for the pleas entered pertaining to his prior convictions for non use of a weapon and
> physical force.

Motion at 8. Ford explains that he is in fact alleging two separate violations of his rights. Ford

first alleges that I "added provisions of the sentencing guidelines that were not in the

indictment," and second that I "failed to conduct a modified categorical approach." Reply at 7.

Ford's claims are procedurally defaulted because he did not raise these issues on direct

appeal. As Ford has failed to establish cause and prejudice, or actual innocence, his claims are

barred and cannot be considered by this Court in the present proceedings. See Bousely, 523 U.S.

at 622; see Ramey, 8 F.3d at 1314. Additionally, even if they were not procedurally defaulted

each of the claims would fail on the merits for the following reasons.

(i) *The Court did not add provisions to the sentencing guidelines that were not in the*

   *indictment.*

In Almendarez-Torres v. United States, the United States Supreme Court addressed

whether an indictment must allege the fact of a prior conviction in order to expose a defendant to

an enhanced sentence. 523 U.S. 224 (1998). The defendant in that case claimed his enhanced

sentenced was unjustified because his indictment did not include his prior convictions, and the

court could not sentence him to more than the maximum for the crime he was indicted.  Id.  The

Court found it is not a violation of the defendant's constitutional rights if the government does

not allege in its indictment that a defendant had prior convictions.  The Court stated "[a]n

indictment must set forth each element of the crime that it charges.  But it need not set forth

factors relevant only to the sentencing of offender found guilty of the charged crime."  Id. at 228.

The Supreme Court's subsequent opinion in Apprendi v. United States did not overrule

Almendarez-Torres; rather, it found that Almendarez-Torres was a limited exception to

Apprendi.  Apprendi v. United States, 530 U.S. 466, 490 (2001).  In Apprendi, the Supreme

Court held, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a

crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond

a reasonable doubt."  Id.

The Eighth Circuit has also held that Almendarez-Torres is an exception to Apprendi.  As

a result, prior convictions are simply not an element of the offense and, therefore, need not be set

forth in the indictment, presented to the jury, or found beyond a reasonable doubt.  See United

States v. Sohn, 567 F.3d 392 (8th Cir. 2009); United States v. Davidson, 527 F.3d 703, 706 (8th

Cir. 2008); United States v. Campbell, 270 F.3d 702 (8th Cir. 2001).

Here, Ford's prior convictions were not an element of his offense.  Therefore, they did

not need to be set forth in his indictment, presented to a jury, or found beyond a reasonable

doubt.  See United States v. Sohn, 567 F.3d 392 (8th Cir. 2009).  Ford's prior convictions were

used for the purpose of enhancing his sentencing pursuant to 18 U.S.C. § 924(e) and USSG §

4B1.1, which is clearly proper under Almendarez-Torres and Apprendi.

Furthermore, Ford waived any right "to be indicted by a grand jury on any fact that

establishes the sentence in this case, to have a jury determine any fact that establishes the

sentence in this case, and to have any fact that establishes the sentence in this case proven beyond a reasonable doubt" when he pled guilty.  Plea Agreement at 13.

(ii) *The Court did not need to use a modified categorical approach in enhancing Ford's sentence.*

Ford claims that I violated his "due process rights by not conducting a modified categorical approach as to the factual basis for the pleas entered pertaining to his prior convictions for non use of a weapon and physical force."  Motion at 8.  He alleges that I erred by not thoroughly investigating the prior convictions that were used to enhance his sentence. Specifically, Ford argues that his 1986 felony conviction from Arkansas for Theft of Property (Case No. 1986-92) and his 1991 felony conviction in Missouri from Tampering in the First Degree (Case No. 911-2287) do not qualify as violent felonies under 18 U.S.C. § 924(e).

Ford's claim fails because these convictions were not used to enhance his sentencing.  As stated above, his enhancement to the level of an Armed Career Criminal was based on the following prior felony convictions:  (1) Robbery, Shelby County, Tennessee (Case No. 90-02653); (2) Robbery Second Degree, St. Louis, Missouri (Case No. 911-2287); and (3) Offering Violence by an Inmate in Madison County, Missouri (Case No. CR194-21F).

Ford further alleges that his Shelby County, Tennessee conviction for robbery (Case No. 90-02653) should not be used because it is a non-qualifying felony.  As previously discussed, the robbery conviction in Shelby County is a qualifying felony under 18 U.S.C. § 924(e).  As a result, Ford's sentencing as an Armed Career Criminal was not improper and his due process rights were not violated.

## V.       An Evidentiary Hearing Is Not Warranted

Ford has requested that I hold an evidentiary hearing on his § 2255 claims. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." Anjulo–Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (internal citations omitted). However, an evidentiary hearing need not be held if Ford's "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact." Delgado v. United States, 162 F.3d 981, 983 (8th Cir.1998). Because the record conclusively shows that Ford is not entitled to relief as a matter of law, I will not hold an evidentiary hearing on this matter.

## VI.      Certificate of Appealability

For this Court to grant a certificate of appealability, Ford must make a substantial showing that his constitutional right was denied. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." Id. For the reasons set forth above, I find Ford has not made such a showing. As such, I will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Harold Ford to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 #[1] is **DENIED.**

**IT IS FURTHER ORDERED** that Ford's motion for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Ford has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 20th day of April, 2015.